[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action has been instituted by the plaintiff, Mary Waldschmidt, seeking a dissolution of her marriage with the defendant, George Waldschmidt. Both parties are 48 years old and they have one child who has reached majority age. The parties were married on August 1, 1970. The parties have resided in Connecticut for more than one year prior to the institution of CT Page 7919 this action and the court has jurisdiction over the marriage. Neither party has received public assistance. The parties' marriage has irretrievably broken down and the court issues an order dissolving the marriage.
The wife has a high school education. She started but did not complete college. She is in good health. She is presently an employee at Dunhill where she receives a base salary, and commissions. According to her financial affidavit, she earns approximately a gross weekly income of $618 and a net weekly income of $453. She also owns a business called Carriage House which is a framing business and arts supply store, including consignment art sales. There is a substantial dispute between the parties about the financial status of the Carriage House business. The wife claims that she began work as an employee at Dunhill because the Carriage House business is losing money and cannot meet her financial needs. She has hired people to run the business during the week while she works at Dunhill, and she attempts to manage and run the store during her free time and on weekends. She testified that she can no longer afford to maintain the business, and although she wants to sell or liquidate the business, this desire has been hampered by the business' existing liabilities. The husband, on the other hand, argues that the business is not in distress, that substantial personal expenses are paid through the business, and that she actually receives an income of approximately $20,000 a year from the business in addition to her income from Dunhill.
The court agrees that the wife has used the Carriage House business to pay some of her personal expenses, but this does not change the fact that the business has lost and continues to lose more money than it earns. The husband emphasizes that the business has had significant gross sales since 1991, as high as $250,000. However, these gross sales have decreased substantially since 1994, and especially in recent years, the yearly expenses have far exceeded the yearly income. In short, the business is operating at a net loss and actually cannot afford to provide the funds used by the wife to pay for the personal expenses. The evidence establishes that the Carriage House is not generating enough income to meet its regularly accruing operating expensesand provide the income the husband is attributing to the wife from its operation.
The husband has an MBA degree. He testified that he may need a hip replacement in the future, but the court finds that he is CT Page 7920 not presently suffering from any medical conditions which substantially impair his working ability or his earning capacity. During the course of the marriage he never was unemployed for any significant period and has had a career in sales and marketing, primarily in the garment industry. His annual salary rose and exceeded $100,000 per year during most of the 1990's. In 1993, he started his own business called Costal Trading, which he began to pursue on a full time basis in 1995 after losing his then existing full time employment. The Coastal Trading buys high fashion buttons from Europe and sells them to domestic clothing manufacturers. According to his financial statement, his gross weekly earnings from this business are $1,486 and his net weekly earnings are $1,030, but his testimony clearly indicates that the business has turned the corner and is likely to earn between $75,000 and $125,000 in coming years. The husband testified that since starting the business full time he could have sought employment based on his past sales and marketing experience, but he has not. He also testified that if he again started working as a salesman at this stage of his career he could only earn between $40,000 and $60,000 (excluding commissions) depending on whether the position involved the sale of clothing buttons which are his area of expertise.
In part through the operation of his business part time, the husband accumulated approximately $219,000 in savings. He used $78,000 of this savings to start, capitalize and operate the business on a full time basis and ultimately used all of the remaining balance to pay marital expenses and personal bills, including college expenses of the parties' daughter. The wife emphasizes the husband's unilateral use of this savings for a business which shows economic promise, as compared to the absence of such support for her business which is floundering and failing. In response, the husband emphasizes that especially during the latter part of their marriage, the parties maintained their finances separately and the wife pursued her business to his exclusion. Stated differently, the husband argues that he operated his business and saved his money, whereas, the wife operated her business and spent her money. However, there is no evidence that the wife accumulated any similar, substantial sums during the marriage to promote her business and maintain herself during its operation.
The parties' primary asset is the marital residence at 33 Schoolside Lane, Guilford, Connecticut. The parties stipulated that this property has a fair market value of $217,500 and an CT Page 7921 equity value of approximately $150,000. The parties also own a 34-foot Silverton boat valued at between $55,000 and $70,000, with a $65,000 security loan balance requiring a monthly payment by the husband of about $780. He testified that he has attempted but has been unable to sell the boat without incurring a loss. The parties have substantial liabilities, excluding the mortgage debt; the husband has liabilities totaling approximately $111,900 and the wife has liabilities totaling approximately $24,150.
The court also finds that both parties contributed to their marital difficulties and the cause of the irretrievable breakdown of their marriage cannot be primarily attributed to either of them.
The court has considered the trial evidence, the parties' proposed orders and post-trial memoranda. The court has also considered the statutory criteria regarding the dissolution of marriage, the awarding of alimony, and the dividing of assets and liabilities, including attorney fees. The court issues the following orders:
1. Dissolution. The parties' marriage is dissolved on grounds of an irretrievable breakdown.
2. Alimony. The husband shall pay the wife periodic alimony of $250 per week. In addition to this weekly alimony of $250, for any year that the husband's gross income exceeds $100,000 (as indicated on line 22 of his federal income tax return or its equivalent) he shall pay an additional alimony amount equal to 10% of this total yearly income as follows. Beginning April 30, 1999 and for applicable years thereafter, the plaintiff shall complete his federal income tax return or an estimate of his previous year's gross income and if his gross income exceeds $100,000, he shall pay the wife 10% of this gross amount in 52 equal installments over the next year in addition to the $250 weekly periodic payments. This alimony shall be paid for 12 years and shall terminate upon the death of either party, the wife's remarriage, or the wife's cohabitation as defined by statute. By April 30th of every year beginning April 30, 1999, the parties shall exchange individual income tax returns and any business returns for businesses in which they own an interest.
The court expressly rejects the husband's arguments that neither party should pay alimony. The court finds that the husband's present income exceeds the wife's income and that his CT Page 7922 earning capacity also exceeds her earning capacity. In addition to the other statutory criteria, the court also specifically notes the consideration of the length of the parties' marriage and the parties' incomes and living expenses.
3. Marital Residence. The marital residence shall be sold and the net proceeds of the sale shall be split so that the husband shall receive 35% of the net proceeds and the wife shall receive 65% of these proceeds, with the net proceeds reflecting reasonable closing costs, real estate brokers' fees, and attorneys' fees. Until the residence is sold, the husband shall be entitled to maintain his business in the basement and shall pay for the property's expenses and upkeep, including the mortgage, insurance, taxes and utilities. The court expressly rejects the wife's argument that the husband should quit claim his entire interest in the property to her. The court's order reflects that the husband contributed to the property's acquisition and that he needs to replace the storage space necessary for his business. The court's order also awards most of the equity to her.
4. Personal Assets and Liabilities. Each party shall retain ownership of their respective businesses without any claim from the other. The husband shall retain ownership of the boat listed on his financial affidavit and shall be responsible for and shall make all payments related to the boat and shall hold the wife harmless and indemnify her with respect to all expenses and liabilities related to the boat. The wife shall retain her IRA and retirement accounts and the husband shall retain his IRA and retirement accounts as listed on their respective financial affidavits. Each party shall be responsible for the debts and liabilities listed on their respective financial affidavits. Each party shall be responsible for his or her respective attorney fees. The parties shall execute all documents necessary to effectuate the orders issued herein, including closing and title transfer documents.
Dated July 15th, 1998.
Stevens, J.